**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **ERIN M. BROWN,** *et al.*, | |
| **Plaintiffs,** | |
| v. | **Civil Action No. AW-05-2705** |
| **JOHN C. KEATING,** *et al.*, | |
| **Defendants.** | |

## MEMORANDUM OPINION

This diversity action arises out of an intrafamily dispute over the administration and management of two irrevocable trusts. Plaintiffs Erin M. Brown and Lisa A. Bick ("Plaintiffs") brought suit against their brother, Bret A. Brown; John C. Keating, attorney and trustee; and George E. Christopher Junior, accountant and trustee (collectively, "Defendants"), seeking declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees. Currently pending before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [7]. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Siblings Erin Brown, Lisa Bick, and Bret Brown are the beneficiaries and trustees of two irrecovable trusts ("the Trusts") established by their parents, Ralph and Florence Brown. The chief asset of the Trusts is real property located in Rockville, Maryland, which is worth approximately $10 million and is the source of rental income that is periodically disbursed to the beneficiaries.

The Trusts are administered by the Trustee Committee, which consists of five individuals: the three Brown children; John Keating, an attorney; and George Christopher, an accountant. The

Trustee Committee is empowered to make decisions following a majority vote. Initially, the Trustee Committee was intended to consist of only three members: Bret Brown, John Keating, and George Christopher. Plaintiffs were added to the Committee after they specifically petitioned their father to be included. Their request came following their discovery that their brother, Bret, had misappropriated tens of thousands of dollars from the personal financial accounts of their parents, and had subsequently signed a promissory note to repay $43,000 of the misappropriated funds. Concerned about their brother's trustworthiness, Plaintiffs sought inclusion on the Committee in order to be able to protect their interests in the assets and income of the Trusts. Ralph Brown was amenable to this proposal, and he directed Defendant Keating, who was then acting as his personal attorney, to draft amendments to the Trusts documents so that his daughters would become members of the Trustee Committee upon his death. Plaintiffs allege that Defendant Keating argued against their addition to the Trustee Committee, and then sought to conceal from Plaintiffs his efforts to persuade Ralph Brown that they should not be added. Ralph Brown was apparently unswayed by Keating's counsel, and he reasserted his desire to add Plaintiffs to the Trustee Committee. Ultimately, after Plaintiffs retained their own counsel, amendments to the trust agreements were executed on September 24, 1997, providing that Plaintiffs would become members of the Trustee Committee upon the death of Ralph Brown.

Following Ralph Brown's death in December 1997, a dispute arose over Bret Brown's promissory note, on which a debt of $40,000 remained. Plaintiffs sought to have the note included as an asset of Ralph Brown's estate or of the Trusts. Defendant Keating allegedly assured Plaintiffs that the note would be paid from Bret's interest in the Trusts. However, in July 1998, Defendant Keating informed Plaintiffs that the promissory note would be reappraised. In September 1998,

Plaintiffs were told that the note had been reappraised (allegedly by Defendant Christopher) as having zero value. Plaintiffs objected to this reappraisal, which they considered to be an effort to lay the groundwork for Defendant Brown to escape responsibility for his debt. Plaintiffs view this episode as evidence that, contrary to his responsibilities as a trustee, Defendant Keating was (and remains to this day) an advocate for the interests of Bret Brown.

Plaintiffs' belief that Defendant Keating failed to impartially manage trust business was strengthened when, in December 2004, Defendant Keating proposed that Plaintiffs and the other trustees approve a $100,000 loan to Defendant Brown. Plaintiffs allege that they were told that the purpose of this loan was to provide for the education of Defendant Brown's daughter. When Plaintiffs conditioned their assent to the loan on the imposition of certain restrictions, such as placing the proceeds into a special account earmarked for education, Defendant Brown refused. In March 2005, Plaintiffs were informed by Defendant Keating that, through a majority vote of the other trustees, the loan had been approved over their objections. At this time, Plaintiffs were also informed that the Trustee Committee had approved "Resolution #4," pursuant to which Plaintiff Bick was deemed to owe $7,700 to the Trusts, stemming from expenses allegedly incurred by the Trusts during the course of Plaintiff Bick's divorce proceedings. It was also at this time that Defendant Keating questioned Plaintiff Brown about a promissory note that she had signed in 1990, under which she agreed to repay a $150,000 loan from her father, a loan that Plaintiff Brown contends had long been forgiven. Plaintiff Brown suggest that this inquiry was a veiled threat to withhold the value of the note from her share of trust income. Plaintiffs allege that neither Resolution #4 nor Defendant Keating's questions concerning Plaintiff Brown's past obligations to her father were made in good faith, and that they are really part of an effort to retaliate against

Plaintiffs for objecting to Defendant Brown's loan.

In April 2005, Plaintiffs, through their counsel, requested a full accounting of the management of the Trusts. Defendants have rebuffed this request. They also initially rejected Plaintiffs' demands for documentation of the specific legal and accounting services being provided to the Trusts by Defendants Keating and Christopher, complying with Plaintiffs' requests only after litigation was threatened. The same holds true for Plaintiffs' demands for the minutes of trust meetings, which were tendered only after Plaintiffs threatened to file suit.

These threats were carried out on September 29, 2005, when Plaintiffs filed a complaint in this Court pursuant to 28 U.S.C. § 1332, et seq, alleging violations of Maryland statutory trust law, Tortious Breach of Fiduciary Duty, and Malicious and Willful Misconduct. Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees. On November 1, 2005, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction. The motion is ripe, and an Opinion will now be issued.

## STANDARD OF REVIEW

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction exists in federal courts. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Id.* at 647. The Court should grant the Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Frederickburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).

Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over actions where there is complete diversity of citizenship between all plaintiffs and all defendants and the amount in controversy exceeds $75,000. Courts must rigorously enforce the jurisdictional limits that Congress has set forth in diversity cases. *See Healy v. Ratta*, 292 U.S. 263, 269 (1934) (stating that pursuant to 28 U.S.C. § 1332(a), "due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined"). In determining whether the jurisdictional amount is satisfied, the damages claimed in good faith by the plaintiff in his or her complaint are typically controlling. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction."). "However, where a plaintiff's allegations of jurisdictional facts are challenged, the plaintiff must support them by competent proof." *Patrick v. Sharon Steel Corp.*, 549 F.Supp. 1259, 1261 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). In *St. Paul Mercury*, the Supreme Court set forth the following test for determining whether the jurisdictional amount has been satisfied:

> If, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

303 U.S. at 289 (footnote omitted). As such, the party seeking jurisdiction has the burden of demonstrating that it is not a legal certainty that the claim involves less than the jurisdictional

amount. *Schaefer v. Aetna Life & Cas. Co.*, 910 F. Supp. 1095, 1097 (D. Md. 1996).

**DISCUSSION**

I.     **Aggregation of Claims**

As a threshold matter, this Court must determine whether Plaintiffs Erin Brown and Lisa Bick may consolidate their claims to satisfy the jurisdictional amount. It is well established that an individual plaintiff is entitled to aggregate all of his or her claims against a single defendant, even if the claims arise from completely separate transactions or occurrences. *See Edwards v. Bates County*, 163 U.S. 269 (1896) (permitting aggregation of tort and contract claims); *Stone v. Stone*, 405 F.2d 94, 96 (4th Cir. 1968) (observing that "it is settled law that a plaintiff may aggregate his claims against an opposing party and thereby satisfy the monetary requirement for federal jurisdiction.") Multiple plaintiffs, however, may not ordinarily group their claims to meet the jurisdictional amount. *See Snyder v. Harris,* 394 U.S. 332, 336 (1969) (separate and distinct claims by class members cannot be aggregated to meet jurisdictional amount); *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1412 (4th Cir. 1994) (finding it "fundamental" that each plaintiff allege the necessary amount in controversy). Nonetheless, Courts have long recognized an exception to this non-aggregation principle. "[W]hen several plaintiffs unite to enforce a single title or right, in which they have a *common and undivided interest*, it is enough if their interests collectively equal the jurisdictional amount." *Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.*, 222 U.S. 39, 40-41 (1911) (emphasis added).

Determining what constitutes a "common and undivided interest" can be difficult. As one prominent treatise points out, "the distinction between a common, undivided interest and several and distinct claims is far from clear. Except in certain property dispute contexts, terms such as

6

'common' and 'several' are poor words for a subject matter jurisdiction test—or anything else for that matter—since they have little or no clear and ascertainable meaning." 14B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3704. If a general principle can be stated, it is that aggregation is permitted where plaintiffs "assert claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising under a single title or right." *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1424 (2d Cir. 1997). "Paradigm cases" of common interest are often those "which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D.N.J. 1996). The "identifying characteristic" of a common and undivided interest is that "if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983).

Here, Plaintiffs are joint trustees and beneficiaries, whose claims arise out of two nearly identical trusts and a single parcel of real estate. The rights and interests of one are inextricably tied to those of the other, and any ruling affecting the Trusts would impact both Plaintiffs. Defendants cite *Pinel v. Pinel*, 240 U.S. 594 (1916), to suggest that Plaintiffs' claims are non-aggregable. In *Pinel*, two children, contending that they had been mistakenly omitted from their father's will, sued to establish title to portions of their deceased father's real property. *Id.* at 595-96. One child claimed ownership over one eighth of the property, while the other claimed a two eighth's share. The Supreme Court held that they were not entitled to aggregate the value of their asserted interests to satisfy the jurisdictional amount, because "the title of each complainant is separate and distinct from

7

that of the other." *Id.* Either child could independently claim his right to a portion of the estate, without necessarily affecting the interests of the other. This makes *Pinel* readily distinguishable from the case at hand, where a determination that certain monies are (or are not) owed to the Trusts, as Plaintiffs seek in their Complaint, would inure to the benefit (or detriment) of both Plaintiffs. As such, the Court finds that Plaintiffs have a "common and undivided interest" in the Trusts and may aggregate their claims in order to reach the requisite jurisdictional amount.

II.     **Amount in Controversy**

A.     Bret Brown's Promissory Note

In order to sustain this Court's jurisdiction, Plaintiffs must establish that there is more than $75,000 in controversy between Defendants and themselves. Plaintiffs claim that they are owed $67,000 under a promissory note signed by Defendant Brown, payable from his interest in the Trusts. Defendants argue that this sum should not be included in calculating the amount in controversy, because, for tax purposes, the note had been "reappraised" as having zero value. However, the legitimacy and reasonableness of this "reappraisal" is itself a matter in controversy between the parties. Plaintiffs assert that the reappraisal was performed, over their vehement objections, by Defendant Christopher, and that the primary purpose of the reappraisal was to permit Defendant Brown to escape responsibility for the promissory note. Plaintiffs claim that they were individually pressured to accede to the reappraisal: Plaintiff Brown was allegedly offered a $10,000 cash payment to sign a "Conditional Release" providing that the note had been discharged, and Plaintiff Bick was allegedly told by Defendant Keating that her refusal to acquiesce to the reappraisal would lead him to argue that her country club membership must be considered a taxable asset of the Trusts. Furthermore, Defendant Keating promised Plaintiffs in writing that, "at the

proper time," they would "receive a distribution from the Trust that fully accounts for the face value of the note." Plaintiffs assert that they have received no such distribution; thus, the $67,000 Plaintiffs claim they are entitled to receive from Defendant Brown's share of Trust income counts towards satisfying the jurisdictional amount.

Defendants also argue that Plaintiffs do not state a colorable claim to the promissory note because the statute of limitations to collect on the note has expired. However, the possibility that Defendants will raise a valid affirmative defense to Plaintiffs' claims does not, in and of itself, nullify those claims for purposes of calculating the amount in controversy, unless it is apparent to a legal certainty that the asserted claims have no value. *St. Paul Mercury*, 303 U.S. at 289; *see also Giffin v. Smith*, 256 F. Supp. 746, 747 (N.D. Okla. 1966) ("The fact that a cause of action might be barred by a statute of limitations does not remove jurisdiction from the federal court to hear the action if the jurisdictional amount was sued for and would be due and owing but for the defense of the statute of limitations.") Based upon the record presently before it, this Court cannot say that Plaintiffs' claims to the promissory note are, to a legal certainty, barred by the statute of limitations.[1] In addition, should Defendants subsequently establish that certain of Plaintiffs' claims are time-barred or otherwise without merit, this Court would have discretion to dismiss the action or to retain jurisdiction. *See Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995) (listing factors to consider when determining whether to retain jurisdiction); *Griffin v. Red Run Lodge, Inc.*, 610 F.2d 1198, 1204 (4th Cir. 1979) ("Once jurisdiction exists, subsequent events, such as the determination that one of the aggregated claims was without merit, do not destroy the jurisdictional basis to dispose,

---

[1]In addition to the statute of limitations, Defendants cite numerous other reasons why Plaintiffs' claims to the note may prove groundless, including estoppel and unclean hands. (Defs.' Mot. to Dismiss at 6 n.4.) The Court believes that evaluation of these and other affirmative defenses would be premature at this time.

9

on the merits, of claims [below the jurisdictional amount].")

B.   Declaratory Relief

Plaintiffs also request declaratory relief under 28 U.S.C. § 2201. Plaintiff Bick seeks for the Court to invalidate Trust Resolution #4, which declares that Bick owes $7,700 to the Trusts for expenses incurred during her divorce proceedings in 2001-2002. Bick has raised concerns that this amount may be withheld from her trust income, and requests that this resolution be declared unlawful and unenforceable. Plaintiff Brown prays for a declaration that she has no obligations under a $150,000 promissory note to her father that she signed fifteen years ago. She claims that Defendants have, in retaliation for her objections to their management of Trust affairs, issued a veiled threat to force her to pay the face value of the note by withholding $150,000 from her share of trust income.

In actions seeking declaratory and/or injunctive relief, the amount in controversy is measured "by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). This value may be judged from the viewpoint of either party to the litigation. *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002); *Gov't Employees Ins. Co. v. Lally*, 327 F. 2d 568 (4th Cir. 1964). At issue here is the "value" of Plaintiffs' requested declaratory relief. Plaintiffs suggest that it is $157,500—the amount they ask the court to declare they do *not* owe to the Trusts. Defendants contend there is no value to the relief sought by Plaintiffs, because Plaintiffs have not yet suffered any quantifiable harm—they have not been forced to pay the aforementioned sums to the Trusts, nor has their trust income been withheld to satisfy these purported obligations.

The Court believes that Defendants have adopted an unduly cramped view of the nature of declaratory relief. A party is not required to suffer actual harm before seeking a declaratory

judgment; instead, declaratory relief is appropriate "to settle legal rights and remove uncertainty and insecurity from legal relationships *without awaiting* a violation of the rights or a disturbance of the relationships." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (emphasis added). Furthermore, in injunctive actions, the amount in controversy is measured by the value of the right sought to be protected by the equitable relief. In other words, "it is the value to the plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined that is the yardstick for measuring the amount in controversy." *In re Corestates Trust Fee Litigation*, 39 F.3d 61, 65 (3d Cir. 1994) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3708 at 143-144 (2d ed. 1985)). In the instant case, the activity that Plaintiffs collectively seek to enjoin is the potential diminution of their future trust incomes by $157,700. While this Court would be hesitant to sustain diversity jurisdiction whenever a plaintiff alleges speculative harms that meet the jurisdictional minimum, Plaintiffs here are not without some reasonable grounds for their concerns. Defendants have demonstrated a willingness to use their majority voting rights to enact trust resolutions that run contrary to Plaintiffs' wishes, and, as minority trustees, Plaintiffs have proved powerless to impede them. It is also undisputed that both the enactment of Trust Resolution #4, which requires Plaintiff Bick to pay $7,700 to the Trusts for expenses allegedly incurred in 2001-2002, and the inquiry into Plaintiff Brown's obligations under the 1990 promissory note, which Defendants allege to have recently discovered, took place shortly after Plaintiffs voiced their vehement (and ultimately futile) objections to Defendant Brown's request for a $100,000 loan from the Trusts. Plaintiffs contend that this timing is not coincidental—that Defendants' inquiries into Plaintiffs' past debts are actually a form of retaliation for Plaintiffs' objections to the Trusts' administration, meant to cow Plaintiffs and discourage them

from exercising their rights as beneficiaries and trustees. The Court offers no opinion on the soundness of Plaintiffs' allegations; the proximity of these events, however, suggests that Plaintiffs' unease and uncertainty with respect to their rights to future trust income are not entirely unsubstantiated.

Defendants also suggest that Plaintiff Brown's $150,000 promissory note cannot be included in calculating the amount in controversy because, in support of their Motion for Preliminary Injunction, Plaintiffs argue that the note had obviously been forgiven by Ralph Brown and has no present value. This argument is unavailing, because the fact that Plaintiffs intend to raise a defense to liability under the note does not mean that its value is not presently a matter in dispute between the parties, nor that Defendants may not some day use the note to curtail Plaintiff Brown's trust income, even though it does not provide them with a justifiable basis to do so. Defendants raised the issue of this note and asked Plaintiff Brown to provide them with details "on whether or not this obligation was paid back to Ralph [Brown] and if not, whether [Plaintiff Brown] intends to do so." (Pls.' Mot. for Prelim. Inj., Ex. Q at 4.) In light of Defendants' inquiry, the potential existence of defenses to liability should not hinder Plaintiff Brown from obtaining a declaration that the note is unenforceable.

Accordingly, for the reasons stated above, the Court finds that the declaratory relief sought by Plaintiffs must be included in calculating the amount in controversy. The Court values this relief at $157,500—the amount which Plaintiffs seek to preclude Defendants from being permitted to withhold from their trust income. Although this sum is, on its own, sufficient to meet the $75,000 jurisdictional minimum, the Court also finds that the $67,000 Plaintiffs claim under the promissory note to Defendant Brown may be included in determining the amount in controversy. As such, the

Court believes that the jurisdictional threshold has been clearly met. Consequently, the Court does not find it necessary, for purposes of evaluating the amount in controversy, to address Plaintiffs' additional claims for attorneys' fees, punitive damages, and other forms of injunctive relief.

## CONCLUSION

For the aforementioned reasons, the Court DENIES Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.  An appropriate Order shall follow.


<u>December 20, 2005</u>                                         <u>        /s/                    </u>
Date                                                             Alexander Williams, Jr.
                                                                 United States District Judge